UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

02 DEC -5 PM 4: 35

U.S. ~~DISTRICT COURT~~
N.D. OF ALABAMA

COLONIAL BANK,                    )
                                  )
     Plaintiff,                  )
                                  )
vs.                               )          Civil Action No. CV-01-S-2506-NE
                                  )
AURORA RECYCLING &                )
ENVIRONMENTAL SERVICES, INC.;     )
and WILLIAM CHERNY,               )
                                  )
     Defendants.                 )

**ENTERED**

DEC - 5 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

Defendant Aurora Recycling & Environmental Services, Inc., an Illinois corporation ("Aurora Recycling"), executed several promissory notes, security agreements, and credit documents in favor of plaintiff, Colonial Bank. All of the loan instruments were executed on behalf of the corporate entity by defendant William D. Cherny, a resident of Naperville, Illinois.[1] Mr. Cherny was the incorporator,[2] president, only director, and sole shareholder of Aurora Recycling.[3]

In addition to ten loan instruments that Cherny clearly executed in a representative capacity, as President of Aurora Recycling, he signed three guaranty agreements. The principal question in this suit is whether Cherny executed those guaranties in a personal or representative capacity.

Plaintiff commenced this suit in the Circuit Court of Jackson County, Alabama, alleging that defendants had defaulted under the terms of their respective agreements. Defendants removed the action on the basis of the parties' diversity of citizenship and the requisite amount in controversy. *See* 28 U.S.C. § 1332(a)(1). Aurora Recycling subsequently filed a petition seeking relief under

---

[1] Cherny Deposition at 4.

[2] *Id.* at 14-15.

[3] *Id.* at 7-8.

Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Illinois. As a consequence, all claims of plaintiff, except for that alleged in Count II of the amended complaint,[4] which is specifically directed against Cherny as an alleged personal guarantor of Aurora Recycling's debt, are subject to the automatic stay arising from Aurora Recycling's bankruptcy proceeding. *See* 11 U.S.C. § 362. The action presently is before the court on plaintiff's motion for partial summary judgment, as well as Cherny's motion to strike portions of the affidavit of John E. Beasley,[5] Executive Vice President of Colonial Bank, "Senior Lender for the Northern Region,"[6] and custodian of the relevant loan documents.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

---

[4] Doc. no. 16 (filed Jan. 4, 2002), at 4. (References herein to "doc. no. __" refer to the numbers assigned to pleadings stamped by the Clerk as "filed.")

[5] *See* "William Cherny's Motion to Strike Portions of the Affidavit of John Beasley" (doc. no. 26). There actually are two Beasley affidavits in the record. Cherny's motion to strike refers to the second of these, executed on June 10, 2002, and attached to plaintiff's renewed motion for summary judgment (doc. no 23) as Exhibit C.

[6] Beasley Deposition at 10, 14.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that both of the subject motions are due to be granted in part and denied in part.

## I. SUMMARY OF FACTS

The transactions leading to the institution of this suit are best described by following the parties' paper trail, and summarizing the thirteen instruments executed by defendant Cherny in some capacity. When describing the relevant documents in the following text, this court has used the numbers assigned to the exhibits appended to plaintiff's amended complaint.[7]

---

[7] Copies of the relevant banking instruments were submitted to the court at least four times: *first*, as exhibits to the original complaint; *second*, as exhibits to John E. Beasley's original affidavit, dated Oct. 30, 2001, and submitted in conjunction with plaintiff's original motion for summary judgment (Beasley Depo. Ex. 1); *third*, as exhibits to plaintiff's amended complaint; *and finally*, as exhibits to Beasley's most recent affidavit, dated June 10, 2002, and submitted in support of plaintiff's renewed motion for summary judgment (doc. no. 23, Ex. C).

As noted in the text to which this marginal note is appended, this court has used the numbers assigned to those documents attached as exhibits to plaintiff's amended complaint (doc. no. 16) because, by doing so, the court can overrule as moot those portions of Cherny's motion to strike which myopically focus only upon the fact that Beasley was not present when Cherny executed the relevant documents: *e.g.*,

> It is the position of Defendant William Cherny that these instruments are not admissible upon the Affidavit of John Beasley, because there is no evidence in the record that Beasley had personal knowledge of William Cherny's signature nor that he witnessed that individual known to him as William Cherny to sign [sic] these instruments. The only purported foundation for these records in the Affidavit is Beasley's statement that he reviewed records kept in the ordinary course of business relative to the account of William Cherny, and that he is familiar with said books, records, and account. This is an improper attempt to use the so-called business record exception to the hearsay rule to enter these loan and guarantee instruments into evidence. . . .

Cherny's motion to strike (doc. no. 26), at 9-10. That argument is correct, but only so far as it goes. Its principal deficiency lies in the fact that, during deposition by plaintiff's counsel, Cherny was questioned concerning his execution

**Exhibit 1**: A "Commercial Promissory Note and Security Agreement" in the principal amount of $1,000,000 was signed by Cherny as President of Aurora Recycling on January 27, 1999:[8] *i.e.*, "Aurora Recycling & Environmental Services, Inc., By:  William D. Cherny [signature and typewritten name], Its:  President [typewritten title]."  The "NOTE NUMBER" and "ACCOUNT #" specified on this instrument are 908045 and 8026520968, respectively.  The interest rate specified in this instrument, as well as the four subsequent Promissory Notes and Security Agreements (Exhibits 7, 11, 12, and 13 *infra*), was "variable":  that is, it floated at two percentage points above Colonial Bank's Base Rate ("prime" or "Index" rate).

**Exhibit 2**: A "Line of Credit Agreement" also was executed by Cherny on the same date in the following manner:  *i.e.*, "Aurora Recycling and Environmental Services, Inc., By:  William D. Cherny [signature], Its:  President [handwritten title]."[9]  (It should be noted that this instrument defines the word "Borrower" as meaning "Aurora Recycling and Environmental Services, Inc., an Illinois corporation,"[10] and the term "Guarantors" as "None."[11]  Even so, as discussed hereafter in connection with Exhibit 9 — *i.e.*, the "First Amendment to Line of Credit Agreement and Other Loan Documents" executed on January 21, 2000 — the provision defining the term "Guarantors" subsequently was amended to provide that it referred to "William D. Cherny and ARES

---

of *the exhibits attached to plaintiff's amended complaint* (*see* Cherny Deposition at 17-25), and he admitted that each bore his signature.  The documents identified in text as Exhibits 1 though 13, inclusive, were offered by plaintiff's counsel without objection by either Cherny (a licensed attorney) or his counsel.  *See* Cherny Deposition at 25, lines 12-19.  Therefore, those instruments unquestionably can be considered by this court.

[8] Cherny Deposition at 17-18.

[9] Exhibit 2, at 25; *see also* Cherny Deposition at 18-19.

[10] Exhibit 2, § 1.02, at 2.

[11] *Id*. at 4.

-4-

CORPORATION, an Alabama corporation."[12])   This instrument contains the following acknowledgment:

> STATE OF ALABAMA
> COUNTY OF JACKSON
>
> I, the undersigned, a Notary Public in and for said County in said State, do hereby certify that William D. Cherny, whose name as President of Aurora Recycling and Environmental Services, Inc., an Illinois corporation, is signed to the foregoing instrument, and who is known to me, *and known to be such officer,* acknowledged before me on this day that being informed of the contents of said instrument, *he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation. ...*[13]

The wording of that acknowledgment is virtually identical to the form prescribed by Alabama statute for use by corporate entities when executing "instruments of every description admitted to record":

*i.e.,*

> The following are substantially the forms of acknowledgment to be used in this state, on conveyances and instruments of every description admitted to record:
>
> . . . .
>
> ACKNOWLEDGMENT FOR CORPORATION
> The State of . . . . . . . . . . . .   )
> . . . . . . . . . . . . County        )
> I, . . . . . . . ., a . . . . . . . . in and for said County in said State, hereby certify that . . . . . . whose name as . . . . . . of the . . . . . . ., a corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.
> Given under my hand this the . . . . . . day of . . . . . ., 19 . . . .
>
> . . . . . . . .

---

[12] Cherny also was President of ARES Corporation, an entity which, like defendant Aurora Recycling, was headquartered in Wheaton, Illinois: "They shared the same office." Cherny Deposition at 8-9.  ARES, like Aurora Recycling, operated a facility in Scottsboro, Alabama.  *Id.*  ARES was incorporated by "Aurora Recycling and Environmental Services and Peterson — I believe it was Peterson Sales or Peterson Aluminum." *Id.* at 15.  "Aurora was in the aluminum trading and recycling business," whereas ARES was engaged only "in the aluminum recycling business." *Id.* at 9.  Both corporations now are in bankruptcy. *Id.* at 10.

[13] *Id.* at 26 (emphasis supplied).

-5-

(Style of Officer)

Alabama Code § 35-4-29, at 68-69 (1975) (1991 Replacement Volume).

**Exhibit 3**: A "Revolving Line of Credit Note" in the principal amount of $1,000,000 was executed on January 27, 1999, in the following manner: "Aurora Recycling and Environmental Services, Inc., an Illinois corporation By: William D. Cherny [signature], Its: President [typewritten title]."[14]

**Exhibit 4**: Cherny also signed a "Continuing Guaranty Agreement" on the same date he executed the three preceding instruments. The first paragraphs of that guaranty read, in part, as follows:

> 1. IDENTIFICATION OF PARTIES AND INDEBTEDNESS. The Colonial Bank HUNTSVILLE (hereinafter the "Bank") has loaned, or agreed to loan, monies and/or other things of value to AURORA RECYCLING & ENVIRONMENTAL SERVICES, INC. (*hereinafter the "Debtor"* whether one or more than one).

> _____
> (hereinafter the "Guarantor") *whose name is*, or names are, *signed below has/have guaranteed the indebtedness as defined herein. . . .*

> 2. GUARANTOR'S OBLIGATION. *The Guarantor* hereby absolutely and unconditionally, and without any limitation (except as expressly provided hereinbelow), *guarantees the indebtedness of Debtor to the Bank.* The Garantor's obligation hereunder covers all the indebtedness of the Debtor to the Bank, is continuing and includes any renewals and extensions of the indebtedness or any part thereof. . . . *The Guarantor's obligation hereunder is independent of any obligation of the Debtor.* The Guarantor agrees to provide financial information to the Bank in such form and at such times as the Bank may require. [All cap emphasis in original, italicized emphasis added.]

The blank line provided in the first paragraph, for insertion of the Guarantor's name, was not completed. The guaranty was acknowledged in the following manner:

---

[14] Exhibit 3, at 5; *see also* Cherny Deposition at 19, 20.

I, the undersigned, a Notary Public, in and for said State and County, hereby certify that _____, whose name is signed to the foregoing Continuing Guaranty Agreement and who is known to me, acknowledged before me on this day, that, being informed of the contents of the Continuing Guaranty Agreement, _____ executed the same voluntarily on the day the same bears date.

Given under my hand this 27th day of January, 1999.
STATE OF ALABAMA
COUNTY OF JACKSON

/s/ Donna G. Greer
Notary Public

Again, the blank lines provided for insertion of, *first*, the Guarantor's name and, *second*, personal pronoun ("he") were not completed. Thus, plaintiff twice demonstrated in one document how *not* to conduct significant banking transactions.

Even so, Cherny admitted that the guaranty bears his signature, and that, other than for the Bank's failure to insert his name as guarantor, there is nothing within the four corners of the document specifically indicating that he signed it in a representative capacity.[15] Indeed, the wording of the (albeit, incomplete) acknowledgment signed by Cherny is virtually identical to the form prescribed by Alabama law for use by individuals: *i.e.,*

---

[15] Cherny Deposition at 20, reading as follows:

    Q.    Okay. Exhibit 4, Continuing Guarantee [sic] Agreement, please look at that document and tell me if it bears your signature.

    A.    It does as president.

    Q.    And tell me what indication there is that it is signed as president.

    A.    Under Identification of Parties and Indebtedness, number one.

    Q.    All right. I am looking at it. *Could you please read me the portion that identifies you as signing in a presidential capacity.*

    A.    *There is nothing specific.* [Emphasis supplied.]

The following are substantially the forms of acknowledgment to be used in this state, on conveyances and instruments of every description admitted to record:

ACKNOWLEDGMENT FOR INDIVIDUAL
The State of . . . . . . . . . . . .    )
. . . . . . . . . . . . County         )
      I (name and style of officer) hereby certify that . . . . . . . . . whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date. Given under my hand this the . . . . . . day of . . . . . ., A. D. 19 . . . .

                                   A.B. Judge, etc. (or as the case may be)

Alabama Code § 35-4-29, at 68 (1975) (1991 Replacement Volume).

**Exhibit 5**: Finally, a "General Security Agreement" was executed on the same date of January 27, 1999, in the following manner:  "Aurora Recycling and Environmental Services, Inc. By:  William D. Cherny [signature], Its:  President [handwritten title]."[16]

**Exhibit 6**:  Three months after the preceding transactions (March 26, 1999), Cherny signed a second "Continuing Guaranty Agreement."  The first two paragraphs of that instrument read, in part, as follows:

      1. IDENTIFICATION OF PARTIES AND INDEBTEDNESS. The Colonial Bank Huntsville/Scottsboro (hereinafter the "Bank") has loaned, or agreed to loan, monies and/or other things of value to Aurora Recycling & Environmental Services,

---

[16] Exhibit 5, at 19; *see also* Cherny Deposition at 20-21.  The instrument contains the following acknowledgment which, as previously noted, is virtually identical to the form prescribed by Alabama law for use by corporate entities:

STATE OF ALABAMA
COUNTY OF JACKSON

      I, the undersigned, a Notary Public in and for said County in said State, do hereby certify that William D. Cherny, whose name as President of Aurora Recycling and Environmental Services, Inc., an Illinois corporation, is signed to the foregoing instrument, and who is known to me, and known to be such officer, acknowledged before me on this day that being informed of the contents of said instrument, (s)*he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.* . . .

Exhibit 5, at 20 (emphasis supplied).

Inc. (*hereinafter the "Debtor"* whether one or more than one).
*William D. Cherny, President*
(hereinafter the "Guarantor") *whose name is,* or names are, *signed below has/have guaranteed the indebtedness as defined herein. . . .*

> 2. GUARANTOR'S OBLIGATION. *The Guarantor* hereby absolutely and unconditionally, and without any limitation (except as expressly provided hereinbelow), *guarantees the indebtedness of Debtor to the Bank.* The Garantor's obligation hereunder covers all the indebtedness of the Debtor to the Bank, is continuing and includes any renewals and extensions of the indebtedness or any part thereof. . . . *The Guarantor's obligation hereunder is independent of any obligation of the Debtor.* The Guarantor agrees to provide financial information to the Bank in such form and at such times as the Bank may require. [Emphasis added.]

In this instance, the blank line provided in the first paragraph for insertion of the name of the guarantor contains the typewritten insertion emphasized above, "William D. Cherny, President," and that insertion forms the basis of Cherny's contention that he executed this guaranty in a representative, rather than personal, capacity.[17]  However, there is no other indication within the document itself, or under Cherny's signature, to that effect.[18]  Indeed, this instrument was acknowledged in the following manner:

> I, the undersigned, a Notary Public, in and for said State and County, hereby certify that William D. Cherny, whose name is signed to the foregoing Continuing Guaranty Agreement and who is known to me, acknowledged before me on this day, that, being informed of the contents of the Continuing Guaranty Agreement, he executed the same voluntarily on the day the same bears date.

Given under my hand this 26th day of March, 1999.
STATE OF ALABAMA
COUNTY OF JACKSON

> /s/ Donna G. Greer
> Notary Public
> My Comission Expires:  5-23-00

---

[17] Cherny Deposition at 21-23.

[18] *Id.* at 23 ("Under my signature there is no reference to a corporate title, that's correct.").

-9-

This acknowledgment not only omits any reference to Cherny's corporate office but, as previously noted, it is virtually identical to the form prescribed by Alabama law for use by individuals. *See* Alabama Code § 35-4-29, at 68 (1975) (1991 Replacement Volume).

**Exhibit 7**: A second "Commercial Promissory Note and Security Agreement" in the principal amount of $1,000,000 was executed on January 21, 2000, in the same manner as the original: "Aurora Recycling and Environmental Services, Inc. By William D. Cherny [signature and typewritten name] Its President [typewritten title]."[19] This instrument specifies that it is a renewal of note number 00908045: *i.e.*, Exhibit 1.

**Exhibit 8**: On the same date of January 21, 2000, a "Guarantee" — identifying Colonial Bank as "Lender, Beneficiary or Creditor," and, Aurora as "Borrower" — was signed by Cherny as "Guarantor."[20] In pertinent part, that instrument provides:

> The undersigned, jointly and severally hereafter called the "Guarantor," in order to induce the Beneficiary to extend or continue to extend financial accommodations to the Borrower, hereby guarantees to the Beneficiary the full and prompt payment of all loans, drafts, overdrafts, notes, bills, and all other debts, obligations, and liabilities of every kind and description, whether now owing or hereafter arising out of credit previously, contemporaneously, or hereafter granted by the Beneficiary to the Borrower, whether arising from dealing between the Beneficiary and the Borrower, or from dealings by which the Beneficiary may become, in any manner whatever, a creditor of the Borrower.
>
> . . . .
>
> This Guarantee shall be binding upon *Guarantor, Guarantor's heirs, successor and estate representatives*, and shall continue in effect until Guarantor delivers to the Beneficiary thirty days advance written notice of termination; provided that this Guarantee shall continue in effect thereafter with respect to all indebtedness in existence on the effective date of such termination (including all extensions and renewals thereof and all subsequent accruing interest and other charges thereon) until

---

[19] Exhibit 7; *see also* Cherny Deposition at 23.

[20] *See* Cherny Deposition at 23-24.

all such indebtedness shall be fully paid to Beneficiary. [Emphasis supplied.]
The instrument bears both the typewritten name and handwritten signature of William D. Cherny, but contains no indication that Cherny signed the agreement in any capacity other than personally. Notably, Cherny admitted during deposition that he "make[s] no claims" that this guaranty agreement was executed in a representative capacity.[21]

**Exhibit 9**:  A "First Amendment to Line of Credit Agreement and Other Loan Documents" also was executed on the same date as Exhibits 7 and 8 as follows:  "Aurora Recycling and Environmental Services, Inc., an Illinois corporation By:  William D. Cherny [signature], Its: President [handwritten title]."[22]  Among other amendments specified in this document, the parties agreed that "[t]he following definitions are added or changed in alphabetical order in Section 1.02" of the Line of Credit Agreement originally executed on January 27, 1999:[23] "**Guarantors** shall mean William D. Cherny and ARES CORPORATION, an Alabama corporation."[24]

**Exhibit 10**:  A "Written Extension Agreement," extending the line of credit agreement dated January 27, 1999 (Exhibit 1 *supra*) also was executed on January 21, 2000, by "Aurora Recycling and Environmental Services, Inc. By:  William D. Cherny [signature and typewritten name], Its: President [typewritten title]."[25]

**Exhibit 11**:  Four months later (May 23, 2000), a third "Commercial Promissory Note and Security Agreement" in the principal amount of $1,000,000 was executed in the following manner:  "Aurora Recycling and Environmental Services, Inc. By:  William D. Cherny [signature and

---

[21] *Id.* at 24.

[22] Exhibit 9, at 6; *see also* Cherny Deposition at 24.

[23] Exhibit 9, ¶ 3.A, at 1.

[24] Exhibit 9, ¶ 3.A, at 3 (emphasis in original); *see also supra* note 12 and accompanying text.

[25] *See* Cherny Deposition at 24.

typewritten name], Its: President [typewritten title]."[26] This instrument specifies that it is a renewal of note number 00908045: *i.e.*, Exhibit 1.

Exhibit 12: On November 17, 2000, a fourth "Commercial Promissory Note and Security Agreement" in the principal amount of $1,000,000 was executed in the same manner: "Aurora Recycling and Environmental Services, Inc. By: William D. Cherny [signature and typewritten name], Its: President [typewritten title]."[27] This instrument also specifies that it is a renewal of note number 00908045. Notably, for the first time Cherny inscribed the abbreviation "Pres." following his signature.

Exhibit 13: A fifth, and final, "Commercial Promissory Note and Security Agreement" in the principal amount of $980,000 was executed on February 28, 2001. Its signature provision was: "Aurora Recycling and Environmental [sic] By: William D. Cherny [signature and typewritten name], Its: President [typewritten title]."[28] Again, the instrument specifies that it is a renewal of note number 00908045.

Aurora Recycling defaulted on its obligations under the agreements described as Exhibits 1-4, 7-9, and 11-13 above by failing to pay plaintiff all sums when the same became due, and by filing a petition seeking relief under Chapter 7 of the United States Bankruptcy Code.[29] Plaintiff claims that Cherny also defaulted on the guaranty agreements described as Exhibits 5, 6, and 10 above by failing to assume the responsibilities of Aurora Recycling following its default.[30] Plaintiff claims the following sums are due, pursuant to the obligations on which defendants Aurora Recycling and

---

[26] *Id.*

[27] *Id.* at 25.

[28] *Id.*

[29] Plaintiff's renewed motion for summary judgment (doc. no. 23) ¶ 14.

[30] *Id.* ¶ 17.

Cherny defaulted:   the principal sum of $972,834.17; interest in the amount of $100,179.38, computed from February 28, 2001, through June 10, 2002;[31] and, attorneys' fees and costs in the sum of $107,301.35.[32]

## II. DISCUSSION

This is a diversity jurisdiction case. *See* 28 U.S.C. § 1332(a)(1).  Accordingly, the court must apply state substantive law and federal procedural rules. *See, e.g., Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 494-45 (11th Cir. 1982).   The court also must apply the choice of law rules of the state in which it sits. *See, e.g., Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22, 85 L. Ed. 1477 (1941).  Alabama law provides that, when the parties expressly choose a particular state's law to govern their contract, that choice generally should be given effect. *See, e.g., Ex parte Owen*, 437 So. 2d 476, 481 (Ala. 1983); *Watkins Co. v. Hill*, 108 So. 244 (1926).  Several instruments executed by the parties contain choice of law provisions adopting Alabama law.[33]  Further, all of the guaranty agreements at issue were executed in the State of Alabama.[34]   The substantive law of that state therefore governs this court's determination of the issues presented.

A prima facie case for breach of contract under Alabama law is established when a plaintiff demonstrates:  (1) the existence of a valid contract binding the parties in the action; (2) performance of plaintiff's obligations under the contract; (3) defendant's failure to perform; and (4) resulting

---

[31] *Id.* ¶¶ 15, 18.

[32] *Id.*, Exhibit B (Neal Affidavit).

[33] *See* Exhibit 2, art. VIII, § 8.04, at 23; Exhibit 3 at 5; Exhibit 5, art. VIII, § 8.05, at 18; Exhibit 9, ¶ 8, at 5.

[34] *See* Cherny Deposition at 51.

-13-

damage to the plaintiff. *See, e.g., Employees' Benefit Association v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998); *see generally* 1 *Alabama Pattern Jury Instructions Civil* § 10.12, at 177 (2d ed. 1993).

## A.    The Issue of Cherny's Personal Liability Under the Guaranty Agreements

Cherny admitted during deposition that he signed the three guaranty agreements at issue in this case,[35] but contends that he signed them only in a representative capacity, as President of Aurora Recycling, and that he did not intend to make himself personally liable for the funds advanced to that corporate entity by plaintiff. This argument lacks a substantial basis in either law or fact.

With regard to Alabama law, it is clear that a "guarantor cannot defeat the plain terms of the agreement by saying that he did not *intend* to obligate himself to the provisions of the guaranty agreement." *Government Street Lumber Co., Inc. v. AmSouth Bank*, 533 So. 2d 68, 75 (Ala. 1989) (emphasis supplied); *see also, e.g., Williams v. Bank of Oxford*, 523 So. 2d 367, 371 (Ala. 1988) (same); *Shipp v. First Alabama Bank of Gadsden*, 473 So. 2d 1014, 1018 (Ala. 1985) (same); *Moody v. Schloss & Kahn, Inc.*, 600 So. 2d 1045, 1047 (Ala. Civ. App. 1992) (same). "Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms." *Government Street Lumber*, 553 So.2d at 75 (citing *Medley v. SouthTrust Bank*, 500 So. 2d 1075, 1079 (Ala. 1986)); *see also Williams*, 523 So. 2d at 369 (same).

Further, plaintiff's typewritten insertion of Cherny's corporate office following his name in the first paragraph of the second continuing guaranty agreement (Exhibit 6) did not prevent a personal obligation from attaching to him. *Cf. Moody v. Schloss & Kahn, Inc.*, 600 So. 2d at 1047 ("[W]e find that Moody, by signing (President) after his signature, did not prevent a personal

---

[35] *See* Cherny Deposition at 19-20 (Exhibit 4), 21-23 (Exhibit 6), and 23-24 (Exhibit 8). In addition, Cherny's attorney confessed: "In all frankness, Cherny admitted that he executed those instruments in some capacity, however this motion does not admit liability under said instruments." Cherny's motion to strike (doc. no. 26), at 2 n.2.

Finally, and with regard to the facts, Cherny's argument wholly ignores his admission that the third "Guarantee" agreement (Exhibit 8) was executed by him personally, without any indication of, or reference to, his corporate capacity.[39] The argument also ignores the uncontested fact that the "First Amendment to Line of Credit Agreement and Other Loan Documents," executed on January 21, 2000 (Exhibit 9), made Cherny a guarantor of the original loan.[40]

In sum, plaintiff has established the existence of valid personal guaranty agreements binding defendant Cherny. The second and third elements of a prima facie case are not contested. Cherny does not deny that plaintiff performed all of its obligations, and paid all sums promised to Aurora Recycling, under the terms of the subject promissory notes and credit agreements he executed on behalf of the corporate entity. Cherny also has admitted that Aurora Recycling owes some amount to plaintiff.[41] Further, Cherny has presented no evidence indicating that he has paid any portion of Aurora Recycling's debt to plaintiff. Thus, the only issue meriting additional discussion is plaintiff's proof of damages resulting from defendants' breach of contract.

## B.    Proof of Damages

Plaintiff seeks to establish the amount of principal and accumulated interest owed by

---

conclusive. The certificate may not be contradicted except that it may be impeached by a showing that the purported grantor never appeared before the notary in connection with the acknowledgment of the instrument, that there was no signature on the deed acknowledged, or that the grantor, in making the acknowledgment, was acting under fraud or duress participated in by the grantee or brought to the grantee's notice before parting with the consideration for the deed.

*Id.* at 1100-01 (footnotes omitted, but citing, *e.g.*, *First National Bank of Mobile v. Horner*, 494 So. 2d 419 (Ala. 1986)).

[39] *See supra* text accompanying notes 20 and 21.

[40] *See supra* text accompanying notes 22-24.

[41] Cherny deposition at 29.

-16-

defendants[42] through the affidavit and deposition testimony of John E. Beasley, who was tendered as custodian of the books and records relating to defendants' account with Colonial Bank. Cherny asserts that portions of Beasley's most recent affidavit[43] are inadmissible and, more broadly, that plaintiff has not presented admissible evidence to prove its damages. In relevant part, Beasley stated:

1.      My name is John E. Beasley, and I am a competent adult over the age of 19 years. I am employed as Executive Vice President of Colonial Bank, Plaintiff in the above-styled cause.

2.      As part of my duties and responsibilities as Executive Vice President of Colonial Bank, I am the custodian of the books and records of Colonial Bank, kept in the ordinary course of business of Colonial Bank, relating to the account of Aurora Recycling & Environmental Services, Inc. and William D. Cherny, a/k/a Bill Cherny.

3.      Based upon my review of the books and records of Colonial Bank, kept in the ordinary course of the business of Colonial Bank, relative to the account of Aurora Recycling & Environmental Services, Inc. and William D. Cherny, a/k/a Bill Cherny, I am familiar with said books, records, and account, and I am competent to testify to the matters set forth herein.

. . . .[44]

17.      Defendant, Aurora Recycling & Environmental Services, Inc., has defaulted on the agreements referenced above by failing to pay Colonial Bank all sums when the same became due, by filing a petition seeking relief under Chapter 7 of the United States Bankruptcy Code, and by committing such other events of default as defined in said agreements.

18.      Defendant, Aurora Recycling & Environmental Services, Inc., owes Colonial

---

[42] Plaintiff also claims $107, 301.35 in attorney fees and costs. *See* plaintiff's renewed motion for summary judgment, Exhibit B (affidavit of George M. Neal, Jr.). That amount represents less than ten percent of the principal and accumulated interest claimed by plaintiff. Cherny did not contest the amount claimed, and thereby conceded its reasonableness. Therefore, for purposes of final judgment, it will only be necessary for plaintiff to prove the amount of any attorneys' fees and costs incurred between June 10, 2002, the date on which Mr. Neal's affidavit was executed, and the date of the final court hearing.

[43] As observed in notes 5 and 7 *supra*, there actually are two Beasley affidavits in the record: the first is dated October 30, 2001 (Plaintiff's Exhibit 1 to Beasley Deposition), and the second is dated June 10, 2002 (Exhibit C to plaintiff's renewed motion for summary judgment, doc. no 23). The latter affidavit is the subject of Cherny's motion to strike.

[44] Paragraphs 4 through 16 of Beasley's affidavit address the promissory notes, security agreements, guaranty agreements, and other loan documents described *supra* as Exhibits 1-13.

-17-

Bank the principal sum of $972,834.17, plus interest called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent beginning February 28, 2001 ($100,179.38 interest through June 10, 2002), reasonable attorney's fees, court costs, and future accruals of interest as called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent pursuant to the agreements referenced above. However, this claim of Colonial Bank relative to Defendant, Aurora Recycling & Environmental Services, Inc., is subject to the automatic stay arising from said bankruptcy proceeding.

19.     Defendant, William D. Cherny, a/k/a Bill Cherny, has defaulted on the personal guaranty agreements referenced above by failing to pay Colonial Bank all sums when the same became due following the defaults committed by Defendant, Aurora Recycling & Environmental Services, Inc., as referenced above, and by committing such other events of default as defined in said personal guaranty agreements.

20.     Pursuant to default by Defendant, William D. Cherny, a/k/a Bill Cherny, of the terms of the personal guaranty agreements referenced above and executed in favor of Colonial Bank for the obligation of Aurora Recycling & Environmental Services, Inc., Defendant, William D. Cherny, a/k/a Bill Cherny, owes Colonial Bank the principal sum of $972,834.17, plus interest as called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent beginning February 28, 2001 ($100,179.38 interest through June 10, 2002), reasonable attorney's fees, court costs, and future accruals of interest as called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent pursuant to the agreements referenced above.

21.     Further Affiant saith not.

Cherny asks this court to strike paragraphs 18 and 20 of Beasley's affidavit, arguing that

"[t]he Affidavit itself as written provides absolutely no basis for these figures or what they are based

upon."[45]   Plaintiff responds by asserting that Beasley's statements of the amounts claimed by

Colonial Bank are admissible under Federal Rule of Evidence Rule 803(6), pertaining to "records

of regularly conducted activity," but commonly known as the "business records exception" to the

rule against hearsay.

In his Affidavit and during his deposition, John Beasley articulated the amounts claimed by Colonial against Cherny.  According to Beasley, these damages

---

[45] Cherny's motion to strike (doc. no. 26), at 7.

business records exception."[48]  The reliability prong is rooted in the historic basis for this hearsay exception:  a belief that commercial organizations mandate the preparation and preservation of accurate transactional records.[49]  Reliability, and therefore trustworthiness, is supplied by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."[50]  General indicia of reliability may be determined "from an examination of the records themselves or from testimony that they were kept meticulously.  In each instance, the trial judge determines whether the circumstances indicate a lack of trustworthiness."[51]

The necessity prong, on the other hand, acknowledges that the common law requirement of producing as witnesses all persons who participated in the process of gathering, transmitting, and recording information, or accounting for their absence, proved burdensome, if not impossible.[52]  Accordingly, the Rule "dispense[s] with the necessity of proving each and every entry by the person or persons actually making them."[53]

---

[48] *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 503 (Fed. Cir. 1995).

[49] *See* 30B Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE:  EVIDENCE § 7047, at 396 (Interim Edition 2000) ("The motive for following a routine of accuracy is great and the motive to falsify largely non-existent.").

[50] Fed.R.Evid. 803(6) advisory committee's note.  *See also, e.g.*, WEINSTEIN § 803.11[3], at 803-67 (observing that *reliability* "may be established by such factors as systematic checking, habits of precision on the part of the keeper, reliance by others on the records, or a duty to record accurately.").

[51] *Id.* at 803-69.

[52] *See, e.g.*, 1 E.J. Imwinkelried *et al.*, COURTROOM CRIMINAL EVIDENCE § 1221 (3d ed. 1998) ("In the typical large business organization, identifying or locating the person who made an entry in business records will be difficult. Even if the entrant can be identified, producing him or her at trial might be inconvenient. Finally, the likelihood is that an entrant who had made thousands of similar entries will be unable to recall the circumstances surrounding the entry in question.  For all these reasons, courts have liberalized the foundation for business entries.").

[53] *Louisville and Nashville Railroad Co. v. Know Homes Corp.*, 343 F.2d 887, 896 (5th Cir. 1965) (speaking of pre-Rules version of the business records exception, *i.e.*, the Business Records Act, 28 U.S.C. § 1732).

## 2.     Foundational requirements for the admission of business records

Assuming that proffered records are relevant,[54] there essentially are four (but sometimes more) foundational elements.  The proponent must show:  (1) a "memorandum, report, record, or data compilation, in any form," that was made in the course of regularly conducted business activity; (2) it was the regular practice of the business to make and keep the record; (3) the record was made contemporaneously, by a person with knowledge of the facts of the transaction recorded, or from information transmitted by a person with knowledge; and (4) the authenticating "custodian or other qualified witness" has knowledge of the record keeping procedure of the business.[55]

In addition to the foregoing elements, the Original Writing Rule — sometimes called the "Best Evidence Rule" (Rule 1002)[56] — is implicitly applicable to writings and records which a party seeks to admit as an exception to the rule against hearsay.  Moreover, Rule 901 — requiring that each item of evidence be authenticated or identified by a showing that the matter in question is what

---

[54] Fed.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[55] The Sixth Circuit has described the foundational elements for the admission of business records in the following manner:

A business record must satisfy four requirements in order to be admissible under Rule 803(6):

(1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

This information must be presented through "the testimony of the custodian or other qualified witness[.]" Fed.R.Evid. 803(6).  Business records meeting these criteria are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

*United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001) (some citations omitted).

[56] Fed.R.Evid. 1002, pertaining to the "Requirement of Original," provides:  "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

its proponent claims it to be — also may be implicated.

The first, third, and fourth foundational elements listed above are considered in more detail below.

a.    *first element*:  a "memorandum, report, record, or data compilation, in any form," made in the course of regularly conducted business activity

Rule 803(6)'s phrase "data compilation" has been construed as "broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form.  It includes, but is by no means limited to, electronic computer storage."[57]  Thus,

> [c]omputerized business records are admissible into evidence under essentially the same conditions as apply to the admission of non-computerized records of a regularly conducted activity under Rule 803(6).  No additional authenticating evidence is required just because the records are in computerized form rather than pen or pencil and paper.  Computerized business records are not inadmissible on the ground that the computer itself generated the data contained in its data base.[58]

Accordingly, it thus is immaterial that a business record was "kept" (*i.e.*, stored, maintained, or preserved) in a computer rather than in company books.[59]  Further, computer records are deemed to be in the "custody" of each and every person or entity that properly has access to the data.[60]

Binding authority within the Eleventh Circuit holds that computer records are admissible if

---

[57] 30B Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7047, at 394 (Interim Ed. 2000) (footnote omitted); *see also United States v. Fendley*, 522 F.2d 181 (5th Cir. 1975) (holding in a criminal prosecution that computer data compilations may be business records, and should be treated as any other record of regularly conducted activity); *Olympic Insurance Co. v. Harrison, Inc.*, 418 F.2d 669 (5th Cir. 1969) (same as to civil actions); 3 Michael H. Graham, HANDBOOK OF FEDERAL EVIDENCE § 803.6, at 367-68 (5th ed. 2001) ("The records of regularly conducted activity of a business also include computer and other records prepared by outside agents of the business such as a payroll service bureau.") (footnote omitted); WEINSTEIN § 803.11[6], at 803-75 & n.37 () (citing, *e.g.*, *United States v. Moore*, 923 F.2d 910, 914-15 (1st Cir. 1991) (computer-generated bank loan histories compiled in regular course of business by service bureau connected by telephone lines to bank held admissible)).

[58] WEINSTEIN § 901.08[1], at 901-78 (2d ed. 2002) (footnotes omitted).

[59] *See Sea-Land Service, Inc. v. Lozen International, LLC*, 285 F.3d 808, 819 (9th Cir. 2002) ("For the purposes of Rule 803(6), 'it is immaterial that the business record is maintained in a computer rather than in company books.'" (quoting *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988)).

[60] *See United States v. Bowers*, 920 F.2d 220, 223 (4th Cir. 1990).

-22-

three conditions are met:

> (1) The records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere accumulations or hearsay or uninformed opinion.[61]

Cherny argues that no foundation has been laid to establish the trustworthiness of plaintiff's computer system. Cherny argues that "these computers should be tested for accuracy before documents generated by the system can be deemed admissible."[62] This court disagrees. The proponent of computerized records should not be required to eliminate the possibility of programming errors as a prerequisite for admitting such documents into evidence, absent evidence indicating that the computer system that generated the records is unreliable.[63]

> With regard to questions of inaccuracy and data security, the courts have moved in the direction of not imposing rigid requirements. Thus, in the typical case, the proponent is not required initially to show periodic testing for programming errors or the elimination of all possibilities of data alteration or errors in data entry or programming.[64]

Further, the proponent of computerized records is not required to authenticate the documents by means of a witness who is a computer programmer, or who knows how the computer was tested for programming errors, or who actually entered the data stored in electronic format.[65]

---

[61] *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) (quoting *United States v. Fendley*, 522 F.2d 181, 184 (5th Cir. 1975)).

[62] Cherny's motion to strike, at 8.

[63] *See* WEINSTEIN § 901.08[1], at 901-80.1 (2d ed. 2002) ("The proponent need not offer evidence that the computer was mechanically accurate in producing reliable or accurate results beyond what is necessary to support a conclusion that the proffered information, itself, is reliable.") (citing *United States v. DeGeorgia*, 420 F.2d 889, 893 n.11 (9th Cir. 1969) (holding that a party offering computerized business records need not present evidence as to the mechanical accuracy of the computer when evidence indicates the computer was sufficiently accurate that the company relied upon it in conducting its business)).

*See also* Beasley deposition at 39-40 (where Mr. Beasley testified that Colonial Bank's "computers are correct," because the Bank is "not in the practice of relying on something that's incorrect") and 48 ("We rely on our system to be accurate.").

[64] 2 John W. Strong *et al.*, MCCORMICK ON EVIDENCE § 294, at 284 (footnotes omitted).

[65] *See generally* WEINSTEIN § 901.08[1], at 901-80 (footnotes omitted).

### (i)     Material prepared for litigation

Memoranda, reports, records, or other data compilations that were prepared *specifically* for

litigation, as opposed to being prepared in the regular course of an ongoing business concern, pose

special problems.  The essential inquiry is the trustworthiness of the proffered exhibit:  *i.e.*, does

evidence of the circumstances and manner in which the document was prepared disclose the

possibility of a motive to misrepresent the truth of the matter asserted?

Here, Cherny has not established that Colonial Bank's computer records lack trustworthiness.

The evidence instead shows that the computer data compilations were *not* created solely for purposes

of this litigation.  The fact that plaintiff *printed* data electronically stored within its computer system

in response to Cherny's request for production does not render the underlying data inadmissible.[66]

As one treatise has observed,

> printouts prepared specifically for litigation from databases that were compiled in the
> ordinary course of business are admissible as business records to the same extent as
> if the printouts were, themselves, prepared in the ordinary course of business.  *The
> important issue is whether the database*, not the printout from the database, *was
> compiled in the ordinary course of business.*[67]

---

[66] *See United States v. Ross*, 33 F.3d 1507, 1517 n.17 (11th Cir. 1994) (holding that, "'so long as the original
computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the
fact that the hard copy offered as evidence was printed out for purposes of litigation does not affect its admissibility'")
(quoting *United States v. Hernandez*, 913 F.2d 1506, 1512-13 (10th Cir. 1990); *see also Potamkin Cadillac Corp. v.
B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (holding that business records under Rule 803(6) may include
data stored electronically on computer and later printed out for use in court, so long as the original computer database
was prepared pursuant to business duty in accordance with regular business practice); *AMPAT/Midwest, Inc. v. Illinois
Tool Works, Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990) (holding that, so long as computerized database was created
pursuant to a business duty in accordance with routine business practices, the fact that a printout from that database was
prepared solely for litigation does not adversely affect its admissibility).

[67] WEINSTEIN § 901.8[1], at 901-80.1 (2d ed. 2002) (emphasis supplied) (footnote omitted).  The authors of
another treatise addressed these issues in the following manner:

> The question as to the timeliness of the creation of the record is answered by observing that the time
> requirement refers to when the entry into the data bank was originally made, not the time the printout
> was produced.  With regard to documents prepared for use in litigation, the arrangement of the data
> in a form designed to aid the litigation should not result in exclusion if the data and the retrieval
> processes are themselves reliable . . . .  However, the court must carefully consider whether the record

Cherny has presented no evidence that the databases in which plaintiff electronically stored the principal and interest amounts claimed from defendants were not compiled in the ordinary course of the business of Colonial Bank, nor has he demonstrated that plaintiff reordered or skewed the printouts produced during discovery in such a way that the data contained within the underlying computer software program was portrayed in a misleading manner. Thus, this basis for his motion to strike also lacks merit.

> **b.** *third element*:  **the record was made contemporaneously, by a person with knowledge of the facts of the transaction recorded, or from information transmitted by a person with knowledge**

The first component of this foundational element requires that the proponent demonstrate that the proffered record was "made at or near the time" of the "acts, events, conditions, opinions, or diagnoses" recorded in it.[68] "The purpose of the timeliness requirement is to increase the probability of accuracy."[69]

The second component requires the proponent to demonstrate that the proffered record was "made by a person with knowledge" of the facts of the transaction recorded, or "made from information transmitted by a person with knowledge" of the facts.[70] "The phrase 'person with knowledge' should be liberally construed. The name of the person whose firsthand knowledge was

---

may have been compromised in any way by that process.

2 John W. Strong *et al.*, McCormick on Evidence § 294, at 285-86 (5th ed. 1999) (footnote omitted).

[68] Fed.R.Evid. 803(6).

[69] Weinstein § 803.11[5], at 803-74.

[70] Fed.R.Evid. 803(6). *See also* 2 Charles E. Wagner, Federal Rules of Evidence Case Law Commentary 803-62 to 803-63 (2002) (footnote omitted), observing that:

> In order to satisfy the knowledge requirement of Rule 803(6), the party seeking to admit such evidence may either establish:  1) the preparer of the record had knowledge of the matters reported; 2) the information reported was transmitted by a person with knowledge who was acting in the course of regularly conducted activity; or 3) that it was the regular practice of the activity to rely upon communications with persons with knowledge.

the basis of the entry need not even be known so long as the regular practice was to get the

information from such a person."[71]  More than one person within the business may be involved in

the transmission of the information contained in the record.  Even so,

> [e]ach participant in the chain that created the record — from the initial observer-
> reporter to the final entrant — must be acting in the course of the regularly conducted
> business, or the evidence must meet the test of some other hearsay exception.  The
> reason underlying the business records exception fails if any of the participants are
> outside the pattern of regular activity.[72]

The person making the record "need not have first-hand knowledge if the information has been

verified by an employee of the business."[73]

> Lack of personal knowledge of the entrant or maker may be shown to affect the
> weight to be given to the record, but does not affect its admissibility.  Nor is
> admissibility affected by the fact that the person furnishing the information upon
> personal knowledge did not participate in the matter recorded.[74]

It follows, therefore, that to the extent Cherny's motion to strike is based upon the fact that

"Beasley had no personal knowledge of . . . the amount due on this loan,"[75] his objection misses the

mark.  "Rule 803(6) does not require the testifying witness to have personally participated in the

creation of the document or to know who actually recorded the information."[76]  Rather,

---

[71] WEINSTEIN § 803.11[4], at 803-72 (citing, *e.g.*, *Baxter Healthcare Corp. v. Healthdyne, Inc.*, 944 F.2d 1573, 1576-78 (11th Cir. 1991) (no requirement that person whose firsthand knowledge was basis of entry be identified, so long as it was recording entity's regular business practice to obtain such information from persons with firsthand knowledge), *vacated as moot*, 956 F.2d 226 (11th Cir. 1992)).

[72] WEINSTEIN § 803.11[4], at 803-70 (footnote omitted).

[73] *Id.*, at 803.70.1 *et seq.* (footnote omitted).

[74] 3 Michael H. Graham, HANDBOOK OF FEDERAL EVIDENCE § 803.6, at 332-333 (5th ed. 2001) (footnote omitted).

[75] Cherny's motion to strike, at 3 ("Beasley had no personal knowledge of any of the facts set forth in his affidavit regarding the amount due on this loan *or the signatures on the instruments*.") (emphasis supplied).  This court addressed the emphasized portion of Cherny's objection in note 7 *supra*, holding that Cherny had admitted the authenticity, and his execution, of the loan documents attached as exhibits to plaintiff's amended complaint.

[76] *United States v. Keplinger*, 776 F.2d 678, 693 (7th Cir. 1985); *see also Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994) (holding that, "[a]s long as the other requirements of the business records exception are met, a custodian or 'other qualified witness' need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information") (citing *United*

[a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records.[77]

  c.  *fourth element*: the authenticating "custodian or other qualified witness" has knowledge of the record-keeping procedure of the business

The phrase "other qualified witness" is construed broadly, and the authenticating witness "need not be an employee of the [record-keeping] entity so long as he understands the system," but instead need only "have familiarity with the record-keeping system and the ability to attest to the foundational requirements of Rule 803(6)."[78] Further, it is not necessary that the person laying the foundation for the introduction of business records have personal knowledge of the matters recorded. "*All that is required of the witness is that he or she be familiar with the record-keeping procedure of the organization.*"[79] Moreover, "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record."[80]

---

*States v. Franks*, 939 F.2d 600, 602 (8th Cir. 1991)).

 [77] *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) (citing *United States v. Fendley*, 522 F.2d 181 (5th Cir. 1975)).

 [78] *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993) (citations and internal quotation marks omitted).

 [79] *Dyno Const. Co. v. McWayne, Inc.*, 198 F.3d 567, 575-76 (6th Cir. 1999) (emphasis supplied) (citations omitted); *see also, e.g., United States v. Salgado*, 250 F.3d 438, 452 (6th Cir. 2001) (holding that the "custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices") (citing *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998), and *In re Custodian of Records of Variety Distrib., Inc.*, 927 F.2d 244, 248 (6th Cir. 1991)); *United States v. Dakota*, 197 F.3d 821, 827 (6th Cir. 1999) (holding that it was error for the district court to admit records seized by a government agent during a search of the defendant's home under Rule 803(6), because "[t]he witness testifying at trial must have knowledge of the record keeping procedures of the business," and the testimony of the agent "who was present when the records were seized and who had analyzed the documents for their relevance to the issues at trial . . . did not have knowledge of the recordkeeping procedures of [the defendant's] business and was certainly not the custodian of those records for the business") (citing *United States v. Sturman*, 951 F.2d 1466, 1489 (6th Cir. 1991)); *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1542-43 (Fed. Cir. 1997) (affirming exclusion of evidence because the authenticating witness "did not know when or how the documents were prepared," and, "he failed to testify concerning the record-keeping process related to them, a requirement for admissibility of documents under the business records exception").

 [80] *United States v. Salgado*, 250 F.3d 438, 451-52 (6th Cir. 2001) (quoting *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998)) (internal quotation marks omitted); *see also, e.g., Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994) (holding that, "[a]s long as the other requirements of the business records exception are met, a custodian or 'other qualified witness' need not have personal knowledge regarding the creation of the document offered, or personally participate

-27-

> However, a custodian, who has no personal knowledge as to the circumstances under which the documents were created and who simply collected a group of documents from a wide array of sources in response to the subpoena and merely brought them to court is not qualified to give the necessary foundational testimony.[81]

Here, Cherny finally hits the mark. Beasley's deposition testimony demonstrates an abject lack of substantive knowledge concerning the manner in which Colonial Bank recorded in its computerized databases the principal and interest amounts claimed from defendants. Beasley's testimony simply is based upon viewing computer screens, and, reviewing a group of computer print-outs collected in response to Cherny's deposition subpoena *duces tecum*. For such reasons, Cherny's motion to strike paragraphs 18 and 20 of Beasley's affidavit will be granted.

---

in its creation, or even know who actually recorded the information") (citing *United States v. Franks*, 939 F.2d 600, 602 (8th Cir. 1991)); *United States v. Keplinger*, 776 F.2d 678, 693 (7th Cir. 1985) ("Rule 803(6) does not require the testifying witness to have personally participated in the creation of the document or to know who actually recorded the information.").

   Rather, as the former Fifth Circuit observed in *Rosenberg v. Collins*, 624 F.2d 659 (5th Cir. 1980),

> [a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records.

*Id.* at 665 (citing *United States v. Fendley*, 522 F.2d 181 (5th Cir. 1975)). *Cf.* II Charles W. Gamble, McElroy's Alabama Evidence (5th ed. 1996), where — in speaking of Ala. R. Evid. 803(6), which is identical to the federal rule — Professor Gamble writes:

> There is no requirement that the maker or entrant of the memorandum, report, record, or data compilation have possessed a personal or firsthand knowledge of the matter recorded. Indeed, the custodian or other witness called to authenticate the record may be without such personal knowledge. Such lack of knowledge, of course, goes to the weight of the evidence but not to its admissibility.

> The person who furnished the information to the entrant or maker, however, must have had a firsthand or personal knowledge of such acts, events, conditions, opinions or diagnoses. Additionally, the informant or furnisher of the information must have transmitted it in the ordinary course of business. The requirement of firsthand or personal knowledge does not mean that the person furnishing the information must have been personally involved in the matters reported.

*Id.* § 254.01(2) (footnotes omitted).

   [81] 2 Charles E. Wagner, Federal Rules of Evidence Case Law Commentary 803-65 (2002) (citing, *e.g.*, *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1542-43 (Fed. Cir. 1997) (affirming exclusion of evidence because the authenticating witness "did not know when or how the documents were prepared," and, "he failed to testify concerning the record-keeping process related to them, a requirement for admissibility of documents under the business records exception")).

There is another, more fundamental reason that Cherny's motion to strike those two paragraphs is due to be granted, however, and it is discussed in the following section.

### 3.    "The document speaks for itself"

Both Cherny and plaintiff totally miss the all important point of the business records exception to the rule against hearsay: *that is*, it is *not* the custodial *witness* placed on the stand (or, as here, the witness executing the contested affidavit) who proves the factual issue in dispute, but the *written or printed records authenticated by that witness*.[82]

Here, no "memorandum, report, record, or data compilation, in any form," is attached to the affidavit of John E. Beasley.  Rather, Beasley merely testifies that defendant Cherny

> owes Colonial Bank the principal sum of $972,834.17, plus interest as called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent beginning February 28, 2001 ($100,179.38 interest through June 10, 2002), reasonable attorney's fees, court costs, and future accruals of interest as called for by note to float at the Colonial Bank Base Rate (prime) plus two (2) percent pursuant to the agreements referenced above.[83]

Beasley has no personal knowledge of the assertions made in the foregoing statement,[84] other than that which he acquired from his review of the bank's computer records.[85]  Hence, his testimonial assertions, in the absence of copies of the "memorandum, report, record, or data compilation" that comply with the Federal Rules of Evidence, constitute hearsay; and hearsay may not be offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 802.[86]  To that extent, therefore,

---

[82] As observed in note 45 *supra*, the Federal Rules of Evidence define "hearsay" as "a *statement*, other than one made by the *declarant* while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c) (emphasis supplied).  "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." *Id.* 801(a).  "A 'declarant' is a person who makes a statement." *Id.* 801(b).

[83] Plaintiff's renewed motion for summary judgment (doc. no 23), Exhibit C (second Beasley affidavit), ¶ 20.

[84] *See* Beasley deposition at 29-30, 33, 51-52.

[85] *Id.* at 24, 31, 38.

[86] *See supra* note 47.

-29-

Cherny's motion to strike paragraphs 18 and 20 of Beasley's affidavit also is due to be granted.

## III. CONCLUSION

In conclusion, plaintiff's motion for summary judgment is due to be granted on the issue of defendant William D. Cherny's liability under the personal guaranty agreements executed by him, but denied as to the issue of the damages recoverable.  An evidentiary hearing to determine the amount of principal and accumulated interest owed by defendant Cherny, as well as the amount of any attorney fees and costs incurred by Colonial Bank from June 10, 2002, until the date of hearing,[87] will be held in accordance with the order entered contemporaneously herewith.

DONE this ___5th___ day of December, 2002.

United States District Judge

---

[87] *See supra* note 42.